**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GREEN CLIMATE,

      *Plaintiff*,

    v.

BROOKE L. ROLLINS, Secretary of
Agriculture,

      *Defendant*.

Civil Action No. 1:25-cv-01760 (CJN)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Green Climate challenges a memorandum issued by Secretary of Agriculture Brooke Rollins that aims to streamline various National Forest Service operations by designating vast areas of federal land as currently in an "emergency situation." The Government moves to dismiss, arguing (among other things) that Green Climate lacks Article III standing. The Court agrees and grants the Government's motion.

## I.    Background

On April 3, 2025, Secretary Rollins issued Secretary's Memorandum 1078-006. *See* ECF No. 7-2 ("Memo"). The Memo states that its purpose is "to improve the internal management of the Department and to assure implementation of" Executive Order 14225, which called for the "immediate expansion of American timber production." *Id.* at 6, 1 (capitalizations altered).[1] As most relevant here, the Memo designates several areas of federal land as presently in an "emergency situation." *See id.* at 2–5. Such designations authorize various "emergency actions

---

[1] Because the complaint references and seeks judicial review of Memorandum 1078-006, the Court may consider the Memo on a motion to dismiss without converting the motion to one for summary judgment. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

to respond to emergency situations," such as the "[s]alvag[ing] of dead or dying trees" and the "[h]arvest[ing] of trees damaged by wind or ice." *Id.* at 3.  The Memo states that, "[t]o the extent there is any inconsistency between the provisions of this memo and any federal laws or regulations, the laws or regulations will control." *Id.* at 6.

Green Climate filed this suit later that day.  *See* ECF No. 1 ("Compl.").  Green Climate is "a charitable organization committed to the sustainability and environmental protection of our natural resources," with a focus on "forest conservation" and reducing greenhouse gases. *Id.* ¶ 7.[2] The organization's members "enjoy National Parks and federal forest and wilderness lands across the country" through "hiking, camping, and fishing," and the members "also actively work to protect federal forest and wilderness lands." *Id.*  Green Climate alleges that its "mission will be directly harmed by significant additional harvesting of [National Forest Service] land that will result from" the Memo. *Id*.

According to Green Climate, the memo designates roughly 67 million acres of Forest Service lands because of wildfire risk, 79 million acres because of declining forest health, and 34 million acres because of both wildfire risk and declining health.  *Id.* ¶ 12.  But, Green Climate contends, federal law provides that such designations are only permitted to "mitigate the harm to life, property, or important natural or cultural resources on National Forest System land or adjacent land" or to provide "relief from hazards threatening human health and safety." *Id.* ¶¶ 12–13.

Green Climate characterizes the Memo as both making a final emergency situation determination and directing the Forest Service to implement timber harvesting on National Forest System lands.  *See id.* ¶¶ 1–4, 11–12.  The organization alleges that timber harvesting is not a

---

[2] The Court takes this and the following factual assertions from Green Climate's complaint, accepting them as true for purposes of evaluating the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

permissible "emergency action," that the memorandum conflicts with the Infrastructure Investment and Jobs Act and the Healthy Forests Restoration Act, and that it was issued without public notice or an opportunity for comment. *Id.* ¶¶ 2–4, 13–21. Green Climate asks the Court to declare the memorandum and its designations unlawful and enjoin their implementation. *Id.* at 8.

## II.    Legal Standard

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To satisfy that requirement, a plaintiff must establish that he has standing to sue, meaning, at a minimum, that he has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Demonstrating subject matter jurisdiction is the plaintiff's burden. *Id.* at 561. A challenge to standing is properly raised under Federal Rule of Procedure 12(b)(1). *Noble v. District of Columbia*, 725 F. Supp. 3d 32, 37 (D.D.C. 2024).

At the pleading stage, plaintiffs "must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified). The Court must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff[s'] favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). But "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice," and courts "do not assume the truth of legal conclusions." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because defects in standing are "defect[s] in subject matter jurisdiction," if a federal court lacks jurisdiction, it must dismiss the action. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); Fed. R. Civ. P. 12(b)(1), (h)(3).

### III.     Analysis

As an organization, Green Climate can establish standing in one of two ways:  "It can assert standing on its own behalf, as an organization, or on behalf of its members, as associational standing."  *Elec. Priv. Info. Ctr. v. Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019).  Green Climate does not succeed under either theory.

### A.     Organizational Standing

"An organization may establish Article III standing if it can show that the defendant's actions cause a concrete and demonstrable injury to the organization's activities that is more than simply a setback to the organization's abstract social interests."  *Id.* (citation modified).  Because mere frustration of an organization's objectives "is the type of abstract concern that does not impart standing," *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995), courts must distinguish between "organizations that allege that their activities have been impeded from those that merely allege that their mission has been compromised." *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006).  Determining whether a plaintiff can establish organizational standing requires asking, "first, whether the agency's action or omission to act injured the organization's interest and, second, whether the organization used its resources to counteract that harm." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation modified).

Nothing in Green Climate's complaint suggests that the organization satisfies either prong. Green Climate alleges that it is committed to sustainability and forest conservation and that its "mission will be directly harmed" by the challenged memorandum and emergency situation determination.  Compl. ¶ 7. Mere frustration of an organization's objectives, however, "is the type of abstract concern that does not impart standing." *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1433. Green Climate must instead allege injuries that are sufficiently concrete, but its complaint does not

allege that the Memo caused Green Climate to, for example, divert staff time, spend money on a new program, alter its day-to-day operations, or otherwise impair a relevant organizational activity. *See Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (holding that an organization lacked standing where it had "not asserted the alleged violation 'perceptibly impaired' a non-abstract interest") (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  In short, Green Climate's allegations do not explain how the Memo "directly affected and interfered with" Green Climate's "core business activities." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).  Accordingly, the allegations are insufficient to plead organizational standing.[3]

### B.    Associational Standing

Green Climate also fails to plead facts sufficient to establish associational standing.  An organization has associational standing if: "(1) at least one of [its] members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit." *Elec. Priv. Info. Ctr.*, 928 F.3d at 101 (quoting *Am. Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005)).  Green Climate "stumbles on the first step," *Fund Democracy, LLC v. SEC.*, 278 F.3d 21, 25 (D.C. Cir. 2002), as it has not sufficiently alleged any details about any of its members, let alone that any of its members were injured by the Memo.

According to Green Climate, its members "enjoy National Parks and federal forest and wilderness lands across the country" through, among other activities, "hiking, camping, and

---

[3] Green Climate's organizational standing theory fails for the additional reason that it did not contest the Government's arguments on this front at all.  *Compare* ECF No. 7 (Motion to Dismiss) at 5–6 *with* ECF No. 13 (Response) at 9–11.  The Court can thus "treat [those] unaddressed arguments as conceded." *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

fishing." Compl. ¶ 7. Green Climate fears that "actions authorized by the Memorandum will lead to increased logging activity on millions of acres of federal forest land, with direct and indirect environmental impacts including loss of wildlife habitat, increased carbon emissions, soil erosion, water quality degradation, and impacts to endangered species." *Id.* ¶ 19. Green Climate argues that those two paragraphs suffice "to find that at least one of [the organization's] members have standing in their own right" to bring this claim. ECF No. 13 (Response) at 9.

The Court disagrees. "[A]n organization bringing a claim based on associational standing must show that at least one specifically-identified member has suffered an injury-in-fact." *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006). Green Climate's complaint does not come close to meeting that bar. At most, Green Climate states—in its opposition—that it has members willing to "provide affidavits adequately documenting injury in fact to this Court at the Summary Judgment" stage. Response at 9–10. But even assuming those members belonged to Green Climate at the time it initiated this suit, a plaintiff cannot cure flaws in its complaint with a promise of facts at a later stage or in a later brief. *See Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) ("[A] party may not amend [its] complaint through an opposition brief.").

And even further assuming that Green Climate's complaint identifies real members experiencing real injuries, the complaint's threadbare allegations do not allege injuries that are sufficiently "particular" and "concrete." *See Spokeo, Inc.*, 578 U.S. at 339 (noting that "the particularization and concreteness requirements" are separate inquiries). While it is true that "the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment," a plaintiff must still offer *something* by way of "general factual allegations of injury resulting from the defendant's conduct." *Nat'l Ass'n of Home Builders*, 667 F.3d at 12. Green

6

Climate's allegations do not suffice.  As the Supreme Court held in *Summers v. Earth Island Institute*, allegations of "generalized harm to the forest or the environment" do not alone support standing.  555 U.S. 488, 494 (2009).  But those are precisely the type of allegations that Green Climate makes.  *See* Compl. ¶ 19 (warning of "logging activity," "loss of wildlife habitat, increased carbon emissions, soil erosion, water quality degradation, and impacts to endangered species").  Green Climate provides no indication that the Memo will harm *specific* members by "affect[ing] the[ir] recreational or even the[ir] mere esthetic interests."  *Summers*, 555 U.S. at 494.  For this and the preceding reasons, then, Green Climate lacks associational standing.[4]

### IV.    Conclusion

Because Green Climate has failed to establish that it has Article III standing to press its claims, the Court will grant the Government's motion to dismiss for lack of jurisdiction.  A separate Order will issue contemporaneously.

DATE:  March 27, 2026

CARL J. NICHOLS
United States District Judge

---

[4] Because the Court concludes that Green Climate lacks Article III standing, it need not address the Government's ripeness and APA arguments.  *See* Mot. at 8–12.